# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Reba Bagley, Scott Silver, Tolan Beck, and Rod Hughes, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KB Home, KB Home 401(k) Savings Plan Committee, Bruce Karatz, James A. Johnson, Ray A. Irani, Luis G. Nogales, Leslie Moonves, Domenico Cecere, Cory F. Cohen, William R. Hollinger, and Barry A. Munitz,<br><br>Defendants. | Case No.: CV 07-1754 GPS (SSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** |

On September 8, 2008, the Court held a hearing on two motions to dismiss, and took them under submission. For the reasons set forth below, the Individual Defendants Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) is **DENIED**, and Defendant KB Home's Motion to Dismiss under Rule 12(b)(6) is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

Plaintiffs Reba Bagley, Scott Silver, Tolan Beck, and Rod Hughes, on behalf of themselves and others similarly situated, brought this class action pursuant to § 502 of ERISA

removed

Case 2:07-cv-01754-DSF-SS   Document 110   Filed 10/05/08   Page 2 of 14   Page ID #:825

against KB Home, KB Home 401(k) Savings Plan Committee (the "Committee"), and nine directors and/or officers of KB Home.[1]

Plaintiffs were employees of KB Home ("the Company") who participated in the KB Home 401(k) Savings Plan (the "Plan") and whose retirement investment portfolios included KB Home stock during the time periods described below (the "Class Period"). (First Amended Class Action Complaint ("FAC") ¶ 2.) None of the Plaintiffs remain participants in the Plan.

On August 24, 2006, KB Home publicly disclosed that it had been notified by the Securities and Exchange Commission ("SEC") of an informal investigation into its historical option grants and procedures. (*Id.* ¶ 6.) On November 12, 2006, KB Home responded with an internal investigation, which found improper back-dating. (*Id.* ¶ 8.) On December 6, 2006, the Company announced it would need to restate its financial results from 1999 through 2005 due to "material false statements." (*Id.* ¶ 9.)

The Company's restatement included a massive chargeback of about $41 million for compensation expenses, as well as about $75 million in tax charges and impacts. (*Id.* ¶ 9.) At the same time, several senior officers of KB Home, including Defendant Bruce Karatz, the Chief Executive Officer, resigned. (*Id.* ¶ 10.) Plaintiffs allege that this scheme unjustly enriched the Plan's fiduciaries, including Karatz, to the detriment of the Plan and its Participants. (*Id.* ¶ 11.) Plaintiffs allege that, at this time, Karatz caused the Plan to acquire and hold more than $230 million of his own KB Home stock (*Id.* ¶ 11) and that Defendants collectively realized over $248 million in illicit compensation through the exercise of illegally backdated option grants and subsequent sale of KB home stock, including sales of stock to the Plan and its Participants in exchange for Plan assets. (*Id.* ¶ 12.)

Plaintiffs contend that Defendants' actions allowed them to conceal that KB Home was not recording material compensation expenses and was materially overstating the Company's

---

[1] These nine individuals and the Committee are collectively referred to as "Individual Defendants." The nine individuals are: Bruce Karatz, James A. Johnson, Ray A. Irani, Leslie Moonves, Guy Nafilyan, Domenico Cecere, Cory F. Cohen, William R. Hollinger, and Barry A. Munitz.

2

net income and understating its net loss from 1996 through 2005. (*Id.* ¶ 14.) Moreover, Plaintiffs allege that when the market learned about the improper options backdating at the Company, the Company's stock price plummeted, taking with it the retirement savings in the Plan. (*Id.* ¶ 17.)

Plaintiffs conclude Defendants' alleged involvement in backdating stock options at KB Home, making misleading statements regarding, and failing to disclose to, the Plan and its Participants the Company's "options, practices, and financial results," and engaging in transactions leading to the Plan's holding of KB Home stock were in breach of their fiduciary duties. (*Id.* ¶¶ 4-5.) All Plaintiffs allege that these actions by Defendants' reduced the amount of benefits they received. (*Id.* ¶¶ 35, 39.)

Plaintiffs assert three counts against the various Defendants: (1) breach of Defendants' ERISA fiduciary duty to Plaintiffs in their investment and management of plan assets; (2) breach of their fiduciary responsibility to monitor other fiduciaries; and (3) breach of their fiduciary duty by including misrepresentations and material disclosures in Plan communications. (*Id.* ¶¶ 276-311.) Plaintiffs argue that Defendants are liable under ERISA to restore the lost profits and the losses of vested benefits sustained by the Plan. (*Id.* ¶ 18.

## II.   PROCEDURAL HISTORY

Plaintiffs Bagley and Silver filed the original action on March 16, 2007. On February 22, 2008, the Court granted KB Home's motion to dismiss without leave to amend, and granted the Individual Defendants' motion to dismiss with leave to amend (the "February Order"). Applying *Kuntz v. Reese*, 785 F.2d 1410 (9th Cir. 1986) and *Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406 (9th Cir. 1988), the February Order concluded that Plaintiffs Bagley and Silver lacked standing to sue both KB Home and the Individual Defendants. The Court noted, though, that the claims against Individual Defendants might be salvaged if upon repleading, Plaintiffs alleged sufficient facts to fall under the "*Amalgamated* exception."

On April 3, 2008, Plaintiffs filed the FAC, which added Tolan Beck and Rod Hughes as Plaintiffs against all Defendants.

3

On May 16, 2008, both the Individual Defendants and Defendant KB Home filed motions to dismiss. KB Home's 12(b)(6) motion asserts the Plaintiffs failed to state a claim. Defendant Bruce Karatz joined this motion. Notice, Not. of Joinder of Def. Bruce Karatz. The other Individual Defendants joined this motion in a footnote, Motion by Indiv. Defs. to Dismiss, 4 n.3. The Individual Defendants, except Mr. Karatz, also move to dismiss under 12(b)(1) and 12(b)(6), alleging that Plaintiffs lack standing to sue, both under Article III and ERISA.[2]

## III. DISCUSSION

Because the Court finds Plaintiffs have standing to sue under both Article III and ERISA, the Individual Defendants' Motion to Dismiss pursuant to 12(b)(1) and 12(b)(6) is **DENIED**. Because, as discussed below, Counts I and II of the Amended Class Action Complaint state a claim, and Count II does not, Defendant KB Home's Motion to Dismiss pursuant to 12(b)(6) is **GRANTED** in part and **DENIED** in part.

### A. The Individual Defendants' Motion to Dismiss

The Individual Defendants move to dismiss all claims for lack of jurisdiction pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(1) and Rule 12(b)(6). They argue that Plaintiffs cannot bring their claims because they lack standing under both ERISA and Article III. This argument requires the Court to examine the recently decided cases of *LaRue v. DeWolff, Boberg & Associates*, 553 U.S. ----, 128 S. Ct. 1020 (2008) and *Vaughn v. Bay Envtl. Mgmt., Inc.*, --- F.3d ---, No. 05 17100, 2008 WL 4276603, at *3 (9th Cir. Sept. 19, 2008)[3].

#### 1. **ERISA Standing**

##### a) **Legal Standard**

Whether a plaintiff has statutory standing is an issue to be resolved under Rule 12(b)(6).

---

[2] For simplicity, the motions shall be referred to as the "Individual Defendants' Motion to Dismiss" and "KB Home's Motion to Dismiss."

[3] On September 29, 2008, Plaintiffs filed a motion for leave of court to file a notice of this case as supplemental authority. The motion is **GRANTED**.

4

*Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n. 7 (9th Cir. 2008), *citing Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). As with all 12(b)(6) questions, the Court must deny the motion as long as the complaint "plead[s] enough facts to state a claim to relief that is plausible on its face." *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008), *quoting Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

b) **Discussion**

ERISA §§ 502(a)(2) and (a)(3) confer standing to sue upon "participants" in ERISA-covered employee benefit plans. 29 U.S.C. §§ 1132(a)(2), (a)(3). The statute defines a "participant" as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). In *Kuntz v. Reese*, decided pre-*LaRue*, the Ninth Circuit held that former employees who took a full distribution of the assets in their accounts were not plan participants who could sue under ERISA § 502(a)(2) because their claim would result in a damage award, not in an increase of vested benefits. 785 F.2d 1410, 1411 (9th Cir. 1986). In *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F. 2d 1988 (9th Cir. 1988), the Ninth Circuit then recognized an exception to this rule. There, former plan participants who had received their full distributions sought to impose a constructive trust on profits allegedly gained by plan fiduciaries as a result of breaching their fiduciary duties. 861 F.2d at 1409. Since the defendant had terminated the plan and forced the participants to take the plan benefits given to them, any money returned to the plan would simply cycle back to the wrongdoers, frustrating the purposes of the ERISA remedy. *Id.* at 1411-12. Under these circumstances, the court held standing was authorized by the statute.

In its February order, this Court analyzed Plaintiffs' standing under this case law. The Court held that Plaintiffs were not "participants" under the statute, and, as alleged, did not qualify for the *Amalgamated* exception. The Court found *Amalgamated* distinguishable from this case

5

for three reasons: (1) the Plan has not been terminated, therefore there is nothing to stop current plan participants from filing suit to protect the interests of the Plan; (2) unlike in *Amalgamated*, there were no allegations that the Individual Defendants forced Plaintiffs to take distributions from the Plan; and (3) Plaintiffs had not alleged Defendants improperly profited from transactions with Plan assets. Thus, at that point, Plaintiffs did not have standing under ERISA and this Court dismissed the suit against the Individual Defendants with leave to amend.

However, in analyzing the current motions, these cases no longer control due to *LaRue* and *Vaughn*. In *LaRue*, Justice Stevens noted that the petitioner had withdrawn from the ERISA plan after the Fourth Circuit's decision, and that respondents sought to dismiss the writ of certiorari on mootness grounds. The Supreme Court denied the motion, concluding that a "participant" under ERISA "may include a former employee with a colorable claim for benefits." 128 S. Ct. at 1026, n. 6 (citing *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007)).[4] The Court went on to address the merits of Mr. LaRue's case and found it at least viable.

Interpreting *LaRue* in *Vaughn*, the Ninth Circuit recently held that *Kuntz* "does not control" in a similar situation where plaintiffs had cashed out of a defined contribution plan. *Vaughn*, 2008 WL 4276603, at *3. The *Vaughn* court explained why the named plaintiff had standing:

> Although he received a lump-sum distribution of the value of his individual accounts, he claims that he did not receive a "full" distribution because his accounts contained less than they would have if the fiduciaries had not breached their duty of prudent investment. Because Vaughn alleges that he did not receive everything that was due to him under the Plan, he has standing, even under *Kuntz*.

Plaintiffs here make the same allegation: but for Defendants' misfeasance, their accounts would have contained more money. Therefore, under *Vaughn*, they have standing to bring this action under ERISA.

B. **Article III Standing**

    a. **Legal Standard**

---

[4] Presumably, the Court was unanimous on this issue, since none of the four Justices who concurred in the judgment indicated the case was nonjusticiable.

6

The Individual Defendants also allege Plaintiffs lack Article III standing, and seek dismissal under Rule 12(b)(1). At the pleading stage, plaintiffs must allege facts which, if taken as true, support a proper basis for jurisdiction. *Kenney v. Barnhart*, No. SACV 05-426-MAN, 2006 WL 2092607, at *3 (C.D. Cal. July 26, 2006), *citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

To meet the Article III standing requirements, a plaintiff must demonstrate an "injury in fact," causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). To establish redressability, plaintiffs must show "it [is] 'likely' as opposed to merely 'speculative' that the injury will be redressed by a favorable decision." *Id.* at 561 (citation omitted).

### b. Discussion

In the February Order, the Court held that Plaintiffs' allegations against the Individual Defendants did not satisfy Article III standing requirements on the grounds of redressability. Under ERISA, any assets recovered by the plan could be used to pay current and future Plan expenses, but cannot be earmarked for distributions to former plan members. 29 U.S.C. § 1104(a)(1)(A)(ii). Since none of the Plaintiffs in the initial complaint were members of the plan at the time of the complaint, the Court reasoned, none would be entitled to receive any of these funds. The Individual Defendants again raise this issue regarding the FAC.

In *Vaughn,* the Ninth Circuit did not specifically address this issue. But given that the panel unanimously concluded there was "standing," it appears the court found Article III jurisdiction. Moreover, the *Vaughn* court explicitly "join[ed] the First, Third, Fourth, Sixth, Seventh, and Eleventh Circuits, and [held] that these former employees have standing to bring their claims." 2008 WL 4276603, at *1.[5] Several of these Circuits explicitly rejected

---

[5] Referencing *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217 (11th Cir. 2008); *Evans v. Akers*, 534 F.3d 65 (1st Cir. 2008); *In re Mutual Funds Inv. Litig.*, 529 F.3d 207 (4th Cir. 2008); *Bridges v. Am. Elec. Power Co.*, 498 F.3d 442 (6th Cir. 2007); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291 (3d Cir. 2007); *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007). *See Vaughn*, 2008 WL 4276603, at *1, n.1.

7

redressability-based standing challenges similar to those before this Court.

The underlying logic of all of these decisions is that, if the *LaRue* Court found that case justiciable with no comment on Article III justiciability, despite its being raised by Respondents in their Motion to Dismiss the Writ of Certiorari, plaintiffs who have already cashed out of a defined contribution plan have Article III standing when they have ERISA standing. As the Fourth Circuit noted, the Supreme Court could not "have ruled on statutory standing had the requirements of constitutional standing not been satisfied." 529 F.3d at 219. By simply holding the case was "not moot" in spite of the redressability argument made, the Supreme Court "manifested its belief that the plaintiff there – a cashed-out former employee– had suffered an injury that could be redressed by the court." *Id.* at 220.

In *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007), which the Supreme Court cited approvingly in *LaRue*, the court rejected all arguments about redressability out of hand, saying, "Obviously the named plaintiffs have standing to sue in the sense of being entitled to ask for an exercise of the judicial power of the United States as that term in Article III of the Constitution has been interpreted, because if they win they will obtain a tangible benefit." *Harzewski*, 489 F.3d at 803. The Court agrees, and notes the more detailed reasoning of the First Circuit in *Evans*:

> if the plaintiffs are ultimately successful in this suit, the fiduciaries should, in accord with their statutory duty of care, strive to allocate any recovery to the affected participants in relation to the impact the fiduciary breaches had on their particular accounts. Thus, the plaintiffs' allegation of fiduciary mismanagement, which at this stage in the proceedings we assume to be true, identifies a concrete injury that is redressable by a court and falls within the scope of Article III standing.

534 F.3d 65, 74-75 (1st Cir. 2008), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) and *Harzewski*, 489 F.3d at 803.

Since Defendants' can provide no contrary post-*LaRue* authority, the Court **DENIES** the Individual Defendants' motion to dismiss on statutory and constitutional standing grounds.

B. **Defendant KB Home's Motion to Dismiss**

Defendant KB Home makes a more specific 12(b)(6) motion, alleging that each of the

8

three counts of Plaintiffs' complaint should be dismissed for a failure to state a claim. As discussed below, the Court **DENIES** Defendant KB Home's Motion to Dismiss as to Counts I and II, but **GRANTS** Defendant KB Home's Motion to Dismiss as to Count III. Because Count II is derivative of Counts I and III, this analysis first considers Counts I and III

1. **Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a 12(b)(6) motion, a complaint must state factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and construe all inferences from them in the light most favorable to the nonmoving party. *See NL Indust., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

2. **Discussion**

a. **Count I**

Count I of Plaintiffs' First Amended Complaint alleges Defendants failed to prudently invest and manage the assets of the Plan, in violation of ERISA § 404, 29 U.S.C. § 1104. Plaintiffs allege Defendants should have known KB Home stock was an unsuitable and inappropriate investment, should have done more to prevent the harm, and should have recognized the investment was tainted by a conflict of interests. (FAC ¶¶ 276-87.)

ERISA § 404 mandates that an ERISA plan fiduciary carry out the duties for the exclusive purpose of providing benefits to participants and their beneficiaries, with a prudent person's standard of care. KB Home argues the facts alleged are legally insufficient to establish a breach of that duty, because, based on the listing of prices of KB Home common stock, Plaintiffs cannot show that the stock price "suddenly declined" when the scheme was exposed. (Request of KB Home for Judicial Notice in Supp. of Motion to Dismiss (RJN), Ex. A; KB Home Mot. to Dismiss 12.) After KB Home first announced the stock option backdating on August 23, 2006, the stock

9

actually increased in value from $40.53 on August 23, 2006 to $40.94 the day after.[6] (RJN, Ex.A; KB Home Mot. to Dismiss 12.)

Plaintiffs, however, argue that this short-term comparison is misleading. Since the current share price is now around $19.00 per share, and prior to the revelation of backdating, had a 2005 weighted average closing price of $63.94, the link between the backdating and the change in stock price is at least a matter of factual dispute. (Pls.' Mem. Opp. KB Home Motion to Dismiss 17.) They suggest that some of the earlier investigations into KB Home's practices may have led to the stock's value to decrease prior to the official announcement, i.e., the market had already reacted prior to the announcement. (*Id.* at 6.)

KB Home argues that the Court must follow the "test" set forth in *In re Syncor ERISA Litigation*, 516 F.3d 1095 (9th Cir. 2007). In *Syncor*, the plaintiffs were Syncor employees and members of a defined contribution plan. *Id.* at 1098. After a public disclosure of illegal practices by Syncor subsidiaries, Syncor's stock price dropped nearly fifty percent, resulting in a loss of between 24 and 65.5 million dollars to the plan. *Id.* Considering claims of a violation of the ERISA fiduciary duty, the court noted that *one way* "a violation [of this duty] may occur" is where a stock was "artificially inflated . . . by an illegal scheme about which the fiduciaries knew or should have known, and then suddenly declined when the scheme was exposed." *Syncor*, 516 F.3d at 1102.

KB Home's reliance on *Syncor* is misplaced. First, *Syncor* does not state that the *only* way to show a violation of a fiduciary duty is a sudden decline in stock prices. The court explicitly

---

[6] Plaintiffs, in their Amended Complaint, allege that on August 24, 2006, KB Home publicly disclosed that it had been notified by the United States Securities and Exchange Commission ("SEC") of an informal investigation into its historical stock option grants and procedures. (FAC ¶ 6.) Additionally, on November 12, 2006, the Company announced its internal investigation had concluded that for nearly a decade stock options granted to executives had been backdated. (FAC ¶ 8.) According to the KB Home stock listings, the stock was valued at $43.82 on November 10, 2006, and $44.78 on November 12, 2006 after they announced the backdating. (RJN Ex. A.)

10

noted "the myriad of circumstances that could violate the [prudent man fiduciary] standard." *Id.* Second, *Syncor* was decided at the summary judgment phase- after a comprehensive record was established. The plaintiff's duty to establish causation is far greater at that stage than on a 12(b)(6) motion to dismiss.

This is not only a factual dispute, but one which the Ninth Circuit has recently addressed. In *In re Gilead Sciences Securities Lit.*, 536 F.3d 1049 (9th Cir. 2008), the court reviewed a district court grant of a 12(b)(6) dismissal on the basis that plaintiffs alleging securities fraud had not sufficiently alleged loss causation. 536 F.3d at 1056. The Ninth Circuit held that, even under a heightened Rule 9 fraud pleading requirement and certainly under Rule 8, the complaint was sufficient:

> The Investors here identify a specific economic loss: the drop in value [of stock].... They also allege that this loss was caused by Gilead's misrepresentations. They provide abundant details of Gilead's off-label marketing, and they assert that this led to higher demand for Viread, which in turn inflated Gilead's stock price.

*Id.* These allegations are no less specific than those of Plaintiffs.

The *Gilead* court also specifically discussed the issue of timing and stock price drops. There, the court rejected an argument that the fall in stock price followed too quickly from the divulgence of misrepresentations, saying "A limited temporal gap between the time a misrepresentation is publicly revealed and the subsequent decline in stock value does not render a plaintiff's theory of loss causation per se implausible." 536 F.3d at 1058. The court then noted possible explanations, including that word had gotten out prior to the official letter divulging the misfeasance. *Id.*

The allegations in this case are no less plausible then those presented to the *Gilead* court. Plaintiffs have alleged that backdating and other misconduct caused the value of KB Home stock to drop, and the failure of Plan fiduciaries to properly manage and invest their assets caused Plan members to suffer large economic losses. The allegations of misconduct are detailed, and the complaint clearly alleges that the stock price has fallen. All that remains is the question of causation. In *Gilead*, the court made clear that these factual disputes are not for

11

courts to address on 12(b)(6) motions:

> [W]e note that a district court ruling on a motion to dismiss is not sitting as a trier of fact. It is true that the court need not accept as true conclusory allegations, nor make unwarranted deductions or unreasonable inferences. But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds. There is no exception to this rule for the element of loss causation.

536 F.3d at 1057.

Since Plaintiffs have alleged facts which create a plausible entitlement to relief, the motion to dismiss Count I is **DENIED**.

### b. **Count III**

In Count III of the FAC, Plaintiffs assert that Defendants breached their fiduciary duty of disclosure by including false and misleading statements in the Company's SEC filings, which were incorporated into their fiduciary disclosures to Plan participants "by reference." (FAC ¶¶ 58, 66, 71, 78, 85, 97.) They also allege that Defendants breached their duty of disclosure to Plan participants and beneficiaries by providing misleading information and failing to provide accurate and complete information about the financial health of the Company. (FAC ¶¶ 301-311.)

KB Home argues that Plaintiffs' complaint fails to allege any actual fiduciary statements that contained misrepresentations. SEC filings are not in and of themselves fiduciary communications. *See Kirschbaum v. Reliant Energy Inc.*, 526 F.3d 243, 257 (5th Cir. 2008), *citing In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp.2d 745, 766 (S.D.N.Y. 2003). The allegations that SEC filings were "incorporated by reference" into Plan documents are insufficient to show a fiduciary breach, particularly since Plaintiffs never identify what Plan documents to which they are referring. Plaintiffs' persistent response is to repeat that they have made numerous allegations of misrepresentations in SEC filings, FAC ¶¶ 152, 163, 172, 181, 183, 191, 202, and they have been incorporated into "Plan documents." (Pls. Mem. Opp. KB Home Motion to Dismiss 20-22.) While the 12(b)(6) standard is not very high, as Defendants

point out, there is no support in the FAC for Plaintiffs' assertions that the SEC filings were incorporated into Plan documents.

At the same time, Plaintiffs' allegations "Upon information and belief" that "the Company regularly communicated with employees, including Participants in the Plan" about KB Home's performance, and "fostered a positive attitude toward the Company's stock," FAC 261, cannot be accepted as stating a claim for fiduciary misrepresentation under ERISA. Not only do Plaintiffs provide no specifics as to the time, place, manner, or content of these "communications," but they fail to suggest that the statements were connected to future benefits and made by those involved with benefits, as case law clearly requires. *See Vanity Corp. v. Howe*, 516 U.S. 489, 498-502 (1996). Since Plaintiffs have "made no showing that [defendants]were speaking as fiduciaries when they made the statements at issue . . . , any remedy for these statements lies under the securities laws, not ERISA." *Kirschbaum*, 526 F. 3d at 257.

As such, KB Home's motion to dismiss Count III of the FAC is **GRANTED**.

c. **Count II**

In Count II of the FAC, Plaintiffs allege that Defendants breached their responsibility to monitor other fiduciaries. (FAC ¶ 290.) According to Plaintiffs, the duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries. (FAC ¶ 291.)

The parties seem to agree that Count II is derivative of Counts I and II, and if any part of Counts I or III survive, then the motion to dismiss count II must also be denied. In light of the Court's decision to deny the motion to dismiss Count I, the motion to dismiss Count II is **DENIED.**

**III. CONCLUSION**

Based on *LaRue* and *Vaughn*, the Individual Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for lack of jurisdiction is **DENIED**. Since Plaintiffs have sufficiently alleged a breach of fiduciary duty and resulting loss, Defendant KB Home's Motion to Dismiss as to Counts I and II of the FAC is **DENIED**. Since Plaintiffs have failed to state a claim on Count III,

1  KB Home's Motion to Dismiss as to Count III is **GRANTED**.

2  **IT IS SO ORDERED.**

3

4  DATED: _October 5, 2008_____

5                                          GEORGE P. SCHIAVELLI
                                            _____
6                                           GEORGE P. SCHIAVELLI
                                            UNITED STATES DISTRICT JUDGE